UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY CORNER,<br><br>  Plaintiff,<br><br> v.<br><br>MARTY WALSH, Secretary of Labor,<br><br>  Defendant. | No. 21 CV 2867<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

  Mary Corner is a member of a local chapter of the American Postal Workers Union. She says that four of the successful candidates in the Local's 2020 election were ineligible to run for office, and that the Secretary of Labor acted arbitrarily and capriciously, in violation of 5 U.S.C. § 706(2)(A), when he decided not to initiate an enforcement action. She asks that I order the Secretary to set aside the 2020 election results and re-do the election. But the Secretary's decision not to initiate an enforcement action was not arbitrary or capricious, so Corner's complaint is dismissed.

**I. Background**

  Title IV of the Labor-Management Relations and Disclosure Act is designed to ensure "free and democratic union elections." *Chao v. Local 743, International Brotherhood of Teamsters*, 467 F.3d 1014, 1016 (7th Cir. 2006) (quoting *Wirtz v. Local 153, Glass Bottle Blowers Association*, 389 U.S. 463, 475 (1968)). It sets out the substantive requirements for elections and the procedures to challenge elections. *See* 29 U.S.C. §§ 402, 481–483. Any union member who thinks Title IV has been violated

and who has exhausted the remedies available under the union's constitution and bylaws can file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a). The Secretary must investigate the complaint. § 482(b). If the Secretary finds probable cause to believe that a Title IV violation affected the outcome of the election and it hasn't been remedied, he must bring a civil action against the union to set aside the election results and conduct a new election. *Id.*; *Dunlop v. Bachowski*, 421 U.S. 560, 562–63 (1975), *overruled in unrelated part by Local No. 82, Furniture and Piano Moving v. Crowley*, 467 U.S. 526, n.22 (1984).

When the Secretary decides not to sue, the Secretary must issue a statement of reasons outlining "the grounds of decision and the essential facts upon which the Secretary's inferences are based." *Dunlop*, 421 U.S. at 574. The complainant can then challenge the Secretary's decision in the district court, but the court's review is "exceedingly narrow." *Id.* at 590 (Burger, C.J., concurring). Unless the statement of reasons (the only part of the administrative record the court relies on, *see id.* at 572–73)) makes clear that the decision not to sue is arbitrary and capricious, the court will not substitute its judgment for that of the Secretary. *See id.* at 571.

Mary Corner is a member of Northwest Illinois Area Local #7140, a chapter of the American Postal Workers Union. *See* [17-1] at 8.[1] In September 2020, the Local held an election, about which Corner filed three complaints with the Department of Labor. *Id.* at 2, 8, 14. Two of those complaints, both filed after the election took place

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings.

(one in September and the other in December), are at issue here. Corner complained that certain candidates were ineligible for office. *See id.* at 8, 18. The Department said it had found no violation of the Act and that the four candidates were members in "good standing" eligible to run for election. *Id.* at 8. Corner filed suit in this court, alleging that the Secretary's decision not to initiate an enforcement action was arbitrary and capricious, and asking that I direct the Secretary to set aside the results of the 2020 election and order a new one. [11-1] at 1–3.

Defendants filed a motion to dismiss for failure to state a claim or, in the alternative, a motion for summary judgment. [21]. Usually, a court can only consider the plaintiff's complaint when ruling on a 12(b)(6) motion to dismiss. *Burke v. 401 N. Wabash Venture LLC*, 714 F.3d 501, 505 (7th Cir. 2013). If the court chooses to consider evidence outside the pleadings, it generally must convert the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d); *see Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also* Fed. R. Civ. P. 7(a)(2) (answer to complaint is a type of pleading). But there are exceptions to this rule. One exception says that a copy of a "written instrument" that's attached to the pleadings as an exhibit becomes part of the pleading, Fed. R. Civ. P. 10(c), so long as the exhibit is referred to in the complaint and central to the plaintiff's claim. *See Burke*, 714 F.3d at 505 (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The document must be "concededly authentic" and must not require "discovery to authenticate or disambiguate." *Tierney*, 304 F.3d at 738–39.

The second exception allows the court to consider an exhibit attached to a defendant's pleading but not attached to the plaintiff's complaint. *Brownmark Films LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). This is the so-called incorporation-by-reference doctrine, intended to prevent a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [her] complaint a document that prove[s] [her] claim has no merit." *Id.* (quoting *Tierney*, 304 F.3d at 738). As before, the exhibit must be referred to in the plaintiff's complaint, central to her claim, "concededly authentic," and possible to interpret without further discovery. *Burke*, 714 F.3d at 505; *Wright*, 29 F.3d at 1248; *Tierney*, 304 F.3d at 738–39.

That's the case here. Corner didn't attach the Secretary's statements of reasons to her complaint, but the Secretary attached them to his answer to the complaint. [17-1]. Corner often refers to the statements in her complaint, [11-1] at 1–2, and they are central to her claim: her argument is that they show the Secretary acted arbitrarily and capriciously. [26] at 5–6. Corner hasn't challenged the authenticity of the statements, and I don't need additional information (nor would I be permitted to review such information, *Dunlop*, 421 U.S. at 572) to understand them. Given all this, I can consider the Secretary's statements without converting his motion to dismiss to a motion for summary judgment.[2]

---

[2] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Her complaint must contain "a short and plain statement" showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). At this stage, I draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

4

According to the Department of Labor's statement of reasons, written in response to Corner's September complaint, Corner alleged that four incumbent candidates were ineligible to run because they were not members in good standing.[3] [17-1] at 8. First, they hadn't paid dues or per capita taxes every two weeks (as opposed to every month). *Id.* at 9–10. Second, the Local must not have deducted dues because no such deductions were reported on the LM-2 form. *Id.* at 11. Third, the records the Department relied on in determining that the candidates were current in their dues may not have been authentic. *Id.* at 9. And fourth, the Local doesn't qualify as an employer and therefore wasn't authorized to deduct dues. *Id.* at 10–11.

The Department responded to each allegation. It explained that members are not required to pay dues every two weeks but can instead pay them monthly if they aren't using the USPS's automatic dues check-off payroll deduction. *Id.* at 9–10. Three of the candidates were not on the dues payroll-deduction list, but instead had their dues deducted by the Local (for whom they worked as union officials). *Id.* at 10. The fourth candidate had dues deducted both from his USPS paycheck and his Local paycheck. *Id.* The Department also explained that although the LM-2 form may have suggested that the Local didn't deduct dues from the candidates' paychecks, the Department's review of other records showed the candidates were current on their dues. *Id.* at 11.

---

[3] With certain exceptions discussed below, Corner says that the Department misunderstood her allegations, and in its statement of reasons and motion to dismiss, discussed allegations she never made. *See* [26].

5

In response to Corner's calling into question the authenticity of the documents the Department reviewed, the Department simply said that the investigation didn't uncover "evidence of falsification or forgery." *Id.* at 9. Finally, the Department explained that "the employer status of the [Local] is not a consideration in determining whether the incumbents were members in good standing." *Id.* at 10.

The Department responded to Corner's December 2020 complaint with another statement of reasons. *Id.* at 14–18. Only one of those allegations from the December 2020 complaint is at issue here (the eligibility of the four incumbents), and because the Department had already addressed that allegation, it simply referred to its previous statement of reasons finding the candidates were eligible. *Id.* at 18.

This is Corner's seventh election-related complaint filed in or removed to this district.[4] Add the four appeals she's taken from some of those decisions, and this is her eleventh election-related challenge in federal court.[5] The court of appeals has twice warned Corner that her continued filing of essentially identical election-related

---

[4] Her others are *Corner v. Dep't of Labor*, No. 06 C 1397, 2006 WL 1877049 (N.D. Ill. July 5, 2006) (alleging inaccurate election results, ballot tampering, inaccurate voter list, inadequate number of election observers, and a "conspiracy to rig the election results"); *Alexander-Scott & Corner v. Fox*, No. 08 C 7043, 2009 WL 3380670 (N.D. Ill. Oct. 20, 2009) (alleging destruction of secret ballot envelopes, improper restrictions placed on election observers, ballots without candidates' names); *Corner v. Engelhart*, No. 11 C 5183, 2011 WL 4688723 (N.D. Ill. Oct. 4, 2011) (improperly bringing suit against the winner of the chapter's presidential election—not the Secretary of Labor—and alleging that she was ineligible to run); *Corner v. Solis*, No. 11 C 8652, 2012 WL 1969423 (N.D. Ill. June 1, 2012) (again challenging the president's eligibility, though this time by suing the Secretary of Labor); *Porch-Clark & Corner v. Engelhart*, 930 F. Supp. 2d 928 (N.D. Ill. 2013) (same); *Corner v. Acosta*, No. 17 C 8134, 2018 WL 6062464 (N.D. Ill. Nov. 19, 2018) (challenging candidate eligibility and alleging improper use of union newspaper to favor incumbent candidates).

[5] *See Corner v. Dep't of Labor*, 219 Fed. App'x 492, 2007 WL 528814 (7th Cir. 2007); *Corner v. Solis*, 380 Fed. App'x 532 (7th Cir. 2010); *Porch-Clark & Corner v. Engelhart*, 547 Fed. App'x 782 (7th Cir. 2013); *Corner v. Acosta*, 771 Fed. App'x 652 (7th Cir. 2019).

6

complaints could subject her to sanctions. *See Porch-Clark & Corner v. Engelhart*, 547 Fed. App'x 782, 783 (7th Cir. 2013) ("It is time for the plaintiffs to accept the Secretary's decision, and we warn them that more litigation over the 2011 election risks sanctions."); *Corner v. Acosta*, 771 Fed. App'x 652, 654 (7th Cir. 2019) ("We end with a warning…. Any future filings that reprise this argument without distinguishing the circumstances underlying her previous dismissals will subject Corner to possible sanctions.").

**II.  Analysis**

There seems to be some confusion between the parties about how to characterize Corner's complaints. In his motion to dismiss, the Secretary says there are three allegations at issue. First, that the four incumbent candidates were ineligible because they were not "members in good standing." [22] at 7. Second, that the candidates were required to pay their dues and per capita taxes on a biweekly schedule, which they didn't do. *Id*. And third, that the Local was required to report dues deductions for the four candidates on its LM-2 Labor Organization Annual Report but failed to do so. *Id*.

In response to Corner's LM-2 argument, the Secretary says that "[m]atters concerning inaccurate, incomplete, or inadequate LM-2 report filings with the Department are covered by the requirements of [Title II of the Act], not election provisions of Title IV [which covers candidate eligibility]." [22] at n.3. In other words, Corner can't challenge the candidates' eligibility by bringing a Title II complaint. But Corner insists she isn't bringing such a complaint because she isn't alleging that the LM-2 is "inaccurate, incomplete, or inadequate." [26] at 10. What she seems to be

7

alleging—although she never explicitly connects the dots—is that the LM-2 *is* accurate, and because it shows no sign of dues deductions from the candidates, the four candidates must be ineligible to run.

Corner is assuming that the contents of the LM-2 can establish candidates' eligibility.[6] But eligibility to run hinges on whether a member is in good standing. 29 U.S.C. § 481(e). A member in good standing is anyone who has fulfilled the union's member requirements and has neither voluntarily withdrawn nor been expelled or suspended. 29 U.S.C. § 402(o). In interpreting a union's member requirements, the Secretary accepts the relevant union official or governing body's interpretation of those requirements, unless their interpretation is "clearly unreasonable." 29 C.F.R. § 452.3.

Again, Corner responds that she isn't making a member-in-good-standing complaint, either. [26] at 13 ("The Secretary chose to investigate the incumbent's [sic] under the rule of good standing[] when he did not have a complaint regarding members in good standing."); *id.* at 14. Her point is a distinction without a difference. By arguing that the candidates were ineligible, *id.* at 5; [11-1] at 5, Corner is necessarily arguing that they were not members in good standing—that is the sole standard for determining candidate eligibility. *See* 29 U.S.C. § 481(e).

---

[6] This assumption is clear from Corner's response to the Secretary's motion to dismiss: "Next, the Secretary stated my complaint regarding the LM-2 was irrelevant for determining the non-postal workers [sic] eligibility. Why not? The LM-2 is an official record of money being spent by the [Local] Treasurer." [26] at 14.

8

The case boils down to whether the Secretary arbitrarily and capriciously decided that the candidates were eligible. In reaching a decision, the Secretary doesn't have to recite detailed findings of fact but must include the material facts and the grounds of the decision. *Dunlop*, 421 U.S. at 573–74. Here, the Secretary acknowledged Corner's allegation that, because the candidates' dues deductions weren't reflected on the LM-2 form, their dues must not have been deducted. [17-1] at 11. But the Secretary said the Department's own review found otherwise. *Id*. at 9. The Department looked at the Local's dues records, the USPS payroll- and dues-checkoff statements, and the national union's per-capita-tax statements. *Id*. It found that the Local deducted full dues from the union paychecks of three of the candidates from March 2019 to March 2020 (the relevant period for being a member in good standing on election day). *Id*. For the fourth candidate, the USPS deducted dues from his paycheck from January to May 2019; following his retirement, the Local deducted dues from his union paycheck from June 2019 to March 2020. *Id*. Corner might doubt these conclusions, but the Secretary's factual findings are outside my scope of review. *Dunlop*, 421 U.S. at 573; *see also Alexander-Scott & Corner*, 2009 WL 3380670, at *5. It's clear there was a "rational and defensible basis" for the Secretary's decision not to sue, so I affirm the Secretary's decision and conclude that Corner's suit does not state a plausible claim for relief. *Dunlop*, 421 U.S. at 573.

As I noted above, this is Corner's eleventh federal court challenge (counting appeals) to the results of a union election. Many of those suits or appeals challenged the candidates' eligibility to run. *See Corner v. Engelhart*, 2011 WL 4688723; *Corner*

9

*v. Solis*, 2012 WL 1969423; *Porch-Clark & Corner v. Engelhart*, 930 F. Supp. 2d 928; *Porch-Clark v. Engelhart*, 547 Fed. App'x 782; *Corner v. Acosta*, 2018 WL 6062464; *Corner v. Acosta*, 771 Fed. App'x 652. This is the first time she's relied on an LM-2 form to challenge the candidates' eligibility and the first time she's challenged the 2020 election. But the result is the same: more unwarranted burden on the courts. "Every paper filed … no matter how repetitious or frivolous, requires some portion of the [court's] limited resources. A part of the [c]ourt's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *Montgomery v. Davis*, 362 F.3d 956, 957 (7th Cir. 2004) (quoting *In re McDonald*, 489 U.S. 180, 184 (1989). To fulfill that responsibility, district courts can enjoin frequent litigants from filing frivolous lawsuits. *Srivastava v. Daniels*, 409 Fed. App'x 953, 955 (7th Cir. 2011); *see In re Chapman*, 328 F.3d 903, 905–06 (7th Cir. 2003). Given Corner's history of filing frivolous and repetitious lawsuits—despite two warnings from the court of appeals—Corner might think that she can continue to file challenges to the 2020 election. Not so. New twists on an old theme are likely to be just as burdensome and could result in sanctions.

### III. Conclusion

Plaintiff's motion for a final decision, [28], is granted. The Secretary's motion to dismiss, [21], is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: February 18, 2022